**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-216-DCK**

| | | |
|---|---|---|
| **TERESA D. BINGAMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | <u>**ORDER**</u> |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Judgment On

The Pleadings" (Document No. 14) and Defendant's "Motion For Summary Judgment"

(Document No. 16). The parties have consented to Magistrate Judge jurisdiction pursuant to 28

U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the

written arguments, the administrative record, and applicable authority, the undersigned will direct

that Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 14) be <u>denied</u>; that

Defendant's "Motion For Summary Judgment" (Document No. 16) be <u>granted</u>; and that the

Commissioner's decision be <u>affirmed</u>.

## I.     BACKGROUND

Plaintiff Teresa D. Bingaman ("Plaintiff"), through counsel, seeks judicial review of an

unfavorable administrative decision on her application for disability benefits. (Document No. 1).

On or about October 24, 2014, Plaintiff filed an application for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an

inability to work due to a disabling condition beginning August 1, 2013. (Transcript of the Record

of Proceedings ("Tr.") 13, 177-178). The Commissioner of Social Security (the "Commissioner"

or "Defendant") denied Plaintiff's application initially on or about March 5, 2015, and again after reconsideration on or about June 30, 2015. (Tr. 13, 93-96, 101-108). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. Despite your back pain and discomfort, you are able to sit, stand, walk and move your arms without significant loss of control or muscle weakness. The medical evidence does not indicate that you have a condition that can be considered totally disabling at this time. We realize your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 101).

Plaintiff filed a timely written request for a hearing on July 7, 2015. (Tr. 13, 109). On April 10, 2017, Plaintiff appeared and testified at a hearing before Administrative Law Judge Paul Goodson (the "ALJ"). (Tr. 13, 31-68). In addition, Karl S. Weldon, a vocational expert ("VE"), and Daniel A. Bridgman, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued a partially unfavorable decision on June 13, 2017. (Tr. 9-11, 13-26). On August 3, 2017, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on February 21, 2018. (Tr. 1-3, 157). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on April 24, 2018. (Document No. 1). On August 30, 2018, the parties consented to Magistrate Judge jurisdiction in this matter. (Document No. 11).

Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 14) and Plaintiff's "Summary Of The Case" (Document No. 15) were filed October 30, 2018; and Defendant's "Motion For Summary Judgment" (Document No. 16) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 17) were filed November 29, 2018. Plaintiff declined to file a reply brief, and the time to do so has lapsed. See Local Rule 7.2 (e). Based on the foregoing, the pending motions are now ripe for review and disposition.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability

determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 1, 2013 and the date of his decision.[1] (Tr. 13, 26). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(4)     whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5)     whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled between August 1, 2013 and February 9, 2017. (Tr. 24-26). However, the ALJ determined that Plaintiff was disabled as of February 9, 2017, the date her age category changed. Id.

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since August 1, 2013, her alleged disability onset date. (Tr. 15). At the second step, the ALJ found that "lumbar degenerative disk disease, post fusion May of 2014; osteoarthritis; and chronic obstructive pulmonary disease" were severe impairments.[2] (Tr. 16). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 16).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the following limitations:

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; should avoid concentrated exposure to temperature extremes, humidity, pulmonary irritants, unprotected heights and unprotected machinery. The claimant is able to occasionally stoop, bend, squat, and kneel; and must have the ability to alternate between sitting and standing, once per hour, while remaining on task. The claimant requires the use of a cane for ambulation, standing, and balancing.

(Tr. 17). In making his finding, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work as an assistant manager and executive housekeeper. (Tr. 24). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a ticket taker, information clerk, and office helper. (Tr. 25). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 1, 2013 and February 9, 2017. In addition, the ALJ concluded that Plaintiff was disabled beginning February 9, 2017 through the date of his decision, June 13, 2017. (Tr. 14, 25-26).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to perform "special-technique" analysis; (2) the ALJ made an improper credibility assessment; (3) the RFC is not supported by substantial evidence; and (4) the ALJ failed to assign weight to several medical opinions. (Document 15, p. 5). The undersigned will discuss each of these contentions in turn.

## A. Special Technique Analysis

In the first assignment of error, Plaintiff argues the ALJ failed to evaluate her mental impairments using the special technique analysis as required in regulation 20 C.F.R. § 404.1520a and pursuant to Patterson v. Berryhill, 846 F.3d 656 (4th Cir. 2017):

> Under the special-technique regulation, if the ALJ determines that a mental impairment exists, he "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings." *Id*. § 404.1520a(b)(1). The ALJ must also document "a specific finding as to the degree of limitation in each of" the four areas of functional limitation listed in § 404.1520a(c)(3). *Id*. § 404.1520a(e)(4). In the first three areas of functional limitations—(a) activities of daily living, (b) social functioning, and (c) concentration, persistence, or pace—the ALJ must rate the degree of limitation using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id*. § 404.1520a(c)(4). The ALJ must rate the fourth functional area—(d) episodes of decompensation—using "the following four-point scale: None, one or two, three, four or more." *Id*. Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment. *Id*. § 404.1520a(d).

(Document No. 15, p. 5) (quoting Patterson, 846 F.3d 656, 659 (4th Cir. 2017)). Thus, Plaintiff asserts, if the ALJ finds there is a mental impairment, the ALJ must evaluate it under the special-technique regulation pursuant to Patterson. (Document 15, p. 6). According to Plaintiff, the record shows she has suffered from chronic anxiety since 2012, has been prescribed Xanax, which Plaintiff believes to have caused memory loss, and has difficulty concentrating. Id. Additionally, the State agency consultant, Dr. Janis Heffron, Ph.D., concluded that Plaintiff has "mild difficulties in maintaining concentration, persistence, or pace." (Document 15, p.6) (citing Tr. 22). Plaintiff argues that despite evidence of chronic anxiety, the ALJ failed to "consider the effects of [Plaintiff's] mental impairment of anxiety, even if non-severe, and to properly evaluate her anxiety using the special-technique" which is "in plain error and harmful to this Court's ability to meaningful review of the decision." (Document 15, p.6) (citing Tr. 16).

In response, Defendant argues that the ALJ relied upon the opinions of the State agency physicians who evaluated Plaintiff's mental impairments pursuant to the special technique analysis. Defendant explains further:

> [A]lthough the ALJ did not cite to the special technique in his decision, the ALJ considered the opinions of the State Agency physicians, who in fact, evaluated Plaintiff's mental impairment pursuant to the special technique. (Tr. 22, 69-78, 80-90). Here, the state agency consultants Janis Heffron, Ph.D. and Mark Berkowitz, Psy.D. opined that Plaintiff had no restriction of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation, each of extended duration (Tr. 22, 69-78, 80-90). The ALJ assigned these opinions significant weight (Tr. 22). The ALJ's reliance upon the opinions of State Agency medical experts was within his purview and a proper application of the Commissioner's regulations.

(Document 17, pp. 4-5).

Defendant then distinguishes the present case from Patterson. (Document 17, p. 5-6). First, Defendant asserts that the plaintiff in Patterson was found to have severe physical and mental impairments, unlike the present case where Plaintiff's anxiety was found to be a non-severe impairment according to medical evidence. (Document 17, p. 5) (citing Tr. 16). In the present case, the ALJ noted that Plaintiff's anxiety was controlled; she was noted as compliant with medication; her symptoms were stable with no side effects; she denied any severe anxiety attacks; and she denied fatigue, suicidal ideation and depression. (Document 17, p. 5) (citing Tr. 16, 73, 85, 267-268, 274-277, 293, 300, 583-585, 591, 601, 604, 629, 632, 726-727, 730, 737, 764). Defendant contends "if a symptom can be reasonably controlled by medication or treatment, it is not disabling." (Document 17, p. 5) (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)). Second, Defendant points out that the ALJ in Patterson did not evaluate the severity of Patterson's mental impairments in accordance with the special technique, nor did he document application of

the special technique in his decision as required by the regulation. (Document 17, p. 6) (citing 20 C.F.R. § 404.1520a(e)). In the present case, however, the ALJ cited to and gave great weight to the State Agency physicians, who evaluated Plaintiff's anxiety pursuant to the special technique. (Document 17, p. 6) (citing Tr. 22, 69-78, 80-90).

Finally, Defendant argues that any error here is "harmless" and notes that the Fourth Circuit will not remand a matter due to a harmless error. (Document 17, p. 6) (citing Camp v. Massanari, 22 Fed. Appx. 311, 2001 WL 1658913, at *1 (4th Cir. 2001)). Defendant claims that Plaintiff has failed to show she was harmed by the ALJ's error and that a correction of the error might lead to a different conclusion. (Document 17, p. 6) (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)).

The undersigned finds Defendant's argument persuasive. In considering Plaintiff's mental impairments, the ALJ explains, "her anxiety symptoms were stable on current medication, with no side effects noted, and were generally assessed as controlled. See, for example, Exhibits 1F at pages 2, 9, 8F at pages 64, 74, 10F at pages 49, 59." (Tr. 19). The ALJ explains further:

> The record indicates that the claimant also suffers from anxiety (Exhibit 10F at page 8; noted as controlled; Exhibit 8F at page 56, the claimant was noted as compliant with medication and denied any severe anxiety attacks) … I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 16 and SSR 96-4p and SSR 16-3.

(Tr. 16).

Additionally, it is important to reiterate Defendant's argument that the State Agency medical experts, who were afforded great weight by the ALJ, evaluated Plaintiff's mental impairments using the special technique analysis and found the following: Plaintiff had no restriction of activities of daily living; no difficulties in maintaining social functioning; mild

difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation, each of extended duration. (Tr. 22, 69-78, 80-90).

The undersigned finds that the ALJ adequately considered Plaintiff's history, relevant evidence, and functional limitations in reaching his determination of mental impairment severity.

**B.      Credibility Analysis**

In the second assignment of error, Plaintiff argues the ALJ performed an improper credibility analysis and that the ALJ's symptom evaluation finding fails to consider the factors listed in 20 C.F.R. § 404.1529(c) when evaluating Plaintiff's subjective complaints. (Document 15, pp.7-9). First, Plaintiff argues the ALJ placed an improper burden on the Plaintiff to substantiate her pain intensity with objective findings. (Document 15, p. 7).  In Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017), the court held that once objective medical evidence shows a condition that could reasonably produce the alleged symptoms, the ALJ may not require the claimant to provide objective medical evidence to support the intensity of the pain. Plaintiff asserts that the ALJ cited to evidence, a vast majority of which supported Plaintiff's claims, and determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not fully supported for the reasons explained in this decision." (Document 15, p. 8) (citing Tr. 22). However, Plaintiff argues, the ALJ never specifically explained which complaints he found to be credible or not credible and failed to explain what he relied on in determining credibility. (Document 15, p. 8) (citing Tr. 22, 16-24).

Plaintiff assumes the ALJ erroneously relied on Plaintiff's testimony regarding her daily activities, such as performing housekeeping chores, cleaning her room, doing dishes, taking out the trash, personal grooming, taking medications, and shopping. (Document 15, p. 8). Plaintiff argues that performing chores and maintaining personal hygiene cannot preclude a finding of

disability. (Document 15, pp. 8-9) (citing <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998)) ("Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Second, Plaintiff argues the ALJ ignored hundreds of pages of medical evidence that support Plaintiff's claims and that the ALJ inadequately explained his reasons for denying Plaintiff's benefits given her extensive medical history. (Document 15, p. 10) (citing Tr. 18-24). Plaintiff claims the ALJ cited to several medical opinions that should support a finding of severe impairment, but instead, the ALJ erroneously viewed these findings as "normal," ignoring abnormal findings such as spinal surgeries, steroid epidurals, physical therapy, prescription narcotics, and the use of a TENS unit. (Document 15, pp. 10-11).

In response, Defendant concedes that the ALJ may not have explicitly discussed the factors in 20 C.F.R. § 404.1529(c) within the specific context of Plaintiff's symptom evaluation discussion; however, Plaintiff argues, the ALJ's decision must be read as a whole. (Document 17, p. 7) (citing to <u>Eason v. Colvin</u>, 2013 WL 4858636, *7 (E.D.N.C. Sept. 11, 2013)). Defendant goes on to discuss at great length the plethora of evidence the ALJ considered in evaluating Plaintiff's allegations, including Plaintiff's testimony, examination findings and observations, treatment records, and objective medical evidence and opinions. (Document 17, pp. 7-14) (citations omitted).

In addressing Plaintiff's argument regarding the ALJ's consideration of daily activities, Defendant explains:

> The ALJ specifically noted that Plaintiff's ability to engage in these activities appeared inconsistent with the severity of her allegations (Tr. 22). "The only fair manner to weigh a subjective complaint… is to examine how [it] affects the routine of life." *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (Hall, J. concurring) (Claimant performed a wide range of housework). This being the case, the

relevance of daily activities to the determination of both credibility and disability is beyond dispute. See, e.g., *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)(Claimant performed several activities including cooking, washing dishes, and generally taking care of the house).

(Document 17, p. 8).

The undersigned finds the ALJ performed a proper symptom evaluation in which he considered a variety of factors required by 20 C.F.R. § 404.1529(c) and substantial evidence supports his findings. See (Tr. 17-22). The undersigned is not persuaded that the ALJ ignored "hundreds of pages" of medical evidence. See (Document 15, p. 10). Rather, it appears the ALJ conducted a thorough review of the testimony, medical reports, record evidence, examination findings and observations, and opinion evidence. (Tr. 17-23). The ALJ adequately considered the evidence and explained his reasoning as to why the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not "fully supported" by the record. See (Tr. 22). It is not for the Court to re-weigh the evidence.

## C.    RFC

In the third assignment of error, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to explain how he factored into the RFC the limitations imposed by Plaintiff's pain. (Document 15, p. 11-13). First, Plaintiff asserts that the ALJ's RFC directly contradicts the record, which contains "hundreds of pages" documenting Plaintiff's inability to perform light work due to pain and limitations. (Document 15, p. 12). Specifically, Plaintiff repeatedly reported difficulty walking, standing, and sitting, as well as difficulty moving from a seated position to a standing position. (Document 15, p. 12) (citing Tr. 332, 375, 458, 646-47, 806, 808, 809-11, 818). Plaintiff claimed her pain was worse with walking and standing and nothing alleviated the pain. Id. Plaintiff claims these findings directly contradict

the ALJ's RFC determination that the Plaintiff can perform "light work" which "requires a good deal of walking or standing." (Document 15, p. 12).

Second, Plaintiff argues the ALJ's RFC determination failed to account for any non-exertional limitations such as concentration, persistence, and pace. (Document 15, p. 12). As evidence of Plaintiff's memory loss and difficulty concentrating, Plaintiff provides examples from the testimony where Plaintiff pauses and is unable to complete sentences or recall specific information. (Document 15, p. 13) (citing Tr. 43). Additionally, Plaintiff testified that she gets "a little confused" while shopping at Walmart because she is "in so much pain." (Tr. 60). Plaintiff contends that this testimony, coupled with Plaintiff's chronic anxiety and prescribed psychiatric and narcotic medications, requires the ALJ to account for non-exertional limitations, and the ALJ failed to do so. (Document 15, p. 13) (Tr. 16-24).

In response, Defendant argues that the ALJ followed all relevant legal procedures in determining the RFC and that substantial evidence supports the ALJ's RFC evaluation that Plaintiff could do light work with enumerated limitations. (Document 17, p. 16). Once again, the Defendant describes in great detail the ALJ's analysis and observes the following:

> As cited supra, there is a plethora of evidence to support Plaintiff's ability to do light work with enumerated limitations. Specifically, the record shows that she currently uses a cane; her family doctor managed her mental health symptoms, and her medication had recently been changed because she had short-term memory loss with Xanax; she reported that she was now on Lexapro; she testified that she did not have difficulty with breathing, except for her cold; she continued with physical therapy that began immediately after the fusion surgery; that her pain was at a level of six to eight, with medication; and that she took hydrocodone for three years and a muscle relaxer for approximately three to four years; she had essentially normal findings; her COPD was controlled with medication; she had no acute breathing episodes; she had quit smoking; her anxiety symptoms were stable on medication, with no side effects noted, and were generally assessed as controlled; that her treating physician, Alfred Rhyne, M.D., assessed Plaintiff at

maximum medical improvement, with twelve percent disability rating assigned to the lumbar spine; she was released to return to work, but restricted to no lifting of more than thirty pounds and no excessive lifting, bending, or twisting; after her lumbar epidural steroid injections, she reported improvement in her ability to perform activities of daily living, improved leg pain, and improved ability to ambulate, following the injections; by January 2017, her examinations, findings and observations were generally consistent; she had 5/5 strength throughout both lower extremities; and essentially normal findings, mild degenerative changes.

(Document 17, p. 16).

Defendant further explains that the ALJ considered Plaintiff's ability to accomplish daily activities such as laundry, yard work, dusting, taking out the trash, shopping, doing dishes, taking care of her dog, taking medications without reminders, cooking, paying bills, counting change, handling her checking and savings account, watching television, spending time with her family, and going to dinner with her husband. (Document 17, p. 17) (citing Tr. 16). Defendant argues that "the ability to accomplish these types of tasks on a daily basis demonstrates a level of functionality commensurate with a determination that Plaintiff is capable of performing light work in an employment setting." (Document 17, p. 17).

Last, Defendant argues that the ALJ evaluated the Plaintiff's impairments and reviewed the entire medical record. (Document 17, p. 17). Defendant asserts the ALJ did not ignore abnormal findings, but instead, fully considered the record, including both favorable and unfavorable results, noting Plaintiff's course of treatment, treatment modalities, physical and mental examination results, diagnostic test results, and medical opinions. (Document 17, p. 17) (Tr. 17-24).

The undersigned finds that the ALJ reviewed substantial evidence in the record and properly considered both physical and mental impairments in determining that Plaintiff could perform light work activity with enumerated limitations. See (Tr. 17). The ALJ goes on to describe

in extensive detail, citing to numerous parts of the record, the specific medical evidence that

supports this opinion:

> Examination findings and observations were generally consistent, and in January of 2017 included good affect and appearance; no swelling or edema; good peripheral pulses in all extremities; intact cranial nerves; brisk deep tendon reflexes in the knees and right Achilles tendon and 2+ in the left Achilles tendon; decreased sensory at L4-S1 on the right and at L5-S1 distribution on the left to light touch and pinprick; and 5/5 strength throughout both lower extremities. Exhibit 11F at page 1. Straight leg raise testing was positive; tenderness with palpation over the lumbar facet joint line, PSIS juncture, sacroiliac joint, sciatic notch regions, and lumbar paraspinals was found and an antalgic gait pattern and ambulation with the assistance of a cane were found. Exhibit 11F at pages 1… The claimant was compliant with medication, and her Hydrocodone was increased, as needed, for severe pain. Exhibit 11F at page 2. Recommendations included an aquatic therapy program and that the claimant continue to utilize the TENS unit. Exhibit 11F at page 2.

(Tr. 21).

> In addition, Defendant persuasively argues that:

> [P]laintiff's assertion is an improper request for this Court to reweigh the evidence. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]."). The determination of the claimant's RFC is an administrative decision that is reserved for the Commissioner. 20. C.F.R. § 404.1527(d)(2). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Rather, the ALJ's decision "must 'contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and reason or reasons upon which it is based." *Id.* (quoting 42 U.S.C. § 405(b)(1)).

(Document 17, p. 15).

As pointed out by the Defendant, the ALJ amply supported his decision by citing to

Plaintiff's statements, mental health evaluations, treatment records, pain medication, and objective

medical findings (Tr. 17-24). The ALJ, therefore, properly considered and discussed Plaintiff's physical and mental impairments and satisfied the statutory requirements.

**D.      Medical Opinions**

In the fourth and final assignment of error, the Plaintiff argues that the ALJ failed in properly assigning weight to the opinions of medical providers. (Document 15, p. 13). First, the Plaintiff argues that the ALJ failed to adequately explain his reasons for assigning differing weights to various medical opinions as required under <u>Monroe</u>. (Document 15, p. 14). For example, in assigning significant weight to non-examining State Agency Drs. Janis Heffron, Ph.D and Mark Berkowitz, Psy.D., the ALJ explains they "are familiar with disability rules and definitions and had the opportunity to review the then existing medical record" and their opinions are "generally consistent with the mode of treatment and with the claimant's testimony." (Document 15, p. 14) (citing Tr. 22). Plaintiff argues that this type of reasoning for assigning differing weights to these opinions is "extremely conclusory and without adequate explanation." (Document 15, p. 14).

Second, Plaintiff argues the ALJ failed to "assign or discuss weight to the opinions of five treating physicians: Drs. John Lang, Martin Henegar, David Wiercisiewski, Scott Otis, and Herman Gore; and two physical therapists, Casey E. Hall and Lauren C. Waldron." (Document 15, p. 16) (citing Tr. 22-23). Plaintiff claims the aforementioned "opinions" of treating physicians should have been assessed and assigned weight, but instead, the ALJ only assigned weight to three medical opinions, only one of which, Dr. Alfred Rhyne, M.D., was an examining physician. (Document 15, pg. 16).

In response, Defendant argues that the ALJ properly evaluated the treating physician's opinions and that substantial evidence supports the ALJ's decision. (Document 17, pp. 18-21). In

assigning "some weight" to Dr. Alfred Rhyne, M.D., Defendant notes the ALJ's decision-making process:

> The ALJ stated that Alfred Rhyne, M.D., who treated Plaintiff for her workers compensation injury, opined on multiple occasions to work restrictions such as no lifting of greater than twenty-five pounds and no excessive bending, lifting, and twisting; he assessed Plaintiff at maximum medical improvement, on July 31, 2013, with a twelve-percent disability rating assigned to the lumbar spine. Based upon this, the ALJ assigned some weight to this opinion. The ALJ opined that Dr. Rhyne examined Plaintiff and was familiar with her symptoms and functioning, as of the time of his treatment. However, Dr. Rhyne's opinion did not provide a specific, function-by-function assessment of Plaintiff's ability to perform work-related tasks transferable to a residual functional capacity assessment for disability purposes. (Tr. 23, 462-491).

(Document 17, p. 20). Defendant acknowledges that a claimant's treating physician is entitled to great weight, but only if it is both supported by sufficient clinical findings and is consistent with other evidence. 20 C.F.R. § 404.1527(d)(2). See also Bogle v. Sullivan, 998 F.2d 342, 346-48 (6th Cir. 1993) (citing Young v. Sec'y of HHS, 925 F.2d 146, 151 (6th Cir. 1990).

Second, Defendant argues "that although Plaintiff received treatment from each of these physicians and physical therapists, they did not provide an opinion for the ALJ to evaluate and thus, this argument has no merit." (Document 17, p. 20). Defendant further argues that though "the record is replete with treatment notes, chief complaints, impressions, medical history, surgical notes, diagnosis, diagnostic findings and medical assessments" from Drs. Lang, Henegar, Wiercisiweski, Otis, and Gore, "this evidence does not represent an opinion and, as such, the ALJ was under no duty to assign any weight to this evidence." (Document 17, p. 21). Defendant also contends that the same argument holds true for physical therapists Casey Hall and Lauren Waldron, neither of whom provided an opinion. (Document 17, p. 21). See 20 C.F.R. §§ 404.1513(d) and 416.913 (d); and Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)(noting a therapist does not

qualify as an "acceptable medical source" under the regulations and, as an "other source," such an opinion is entitled to significantly less weight).

In this case, it appears the ALJ has properly considered relevant treatment records and opinion evidence in reaching his determination of Plaintiff's ability to perform light work. In assigning significant weight to State Agency Drs. Heffron and Berkowitz, the ALJ reasoned:

> As State agency consultants, Drs. Heffron and Berkowitz are familiar with disability rules and definitions and had the opportunity to review the then existing medical record as of the date of their respective assessments. In addition, these opinions are generally consistent with the mode of treatment and with the claimant's testimony. For example, the claimant testified to some memory loss with Xanax, and that her medication was changed to Lexapro by her primary care provider. Examination findings generally included that the claimant's memory, attention, and concentration were intact. See, for example, Exhibit 1F at pages 3, 11, 31, 35, 40, 2F at page 8, 3F at pages 12, 17, 18, 8F at pages 58, 66, 10F at pages 4, 5, 15, 49, 13F at page 3.

(Tr. 22).

Later in the decision, in assigning less weight to State Agency consultants Evelyn Jimenez-Medina, M.D., and Martin Rubinowitz, M.D., the ALJ explained:

> I accord some weight to these opinions. Drs. Jimenez-Medina and Rubinowitz have program knowledge. However, they did not examine the claimant. Moreover, the overall record revealed the claimant had specialized treatment. Exhibit 11F. In addition, the overall record demonstrated lesser functioning than [that] opined by these consultants. For example, the claimant was assessed as at maximum medical improvement, with a twelve percent disability rating assigned to the lumbar spine, and work restrictions included no excessive lifting, bending, or twisting. Exhibit 6F at page 1.

(Tr. 23).

The above excerpts indicate an adequate explanation by the ALJ, citing substantial evidence in the record. (Tr. 22-24).

The undersigned notes that the ALJ cited extensively to the treatment records of other

treating physicians, including Dr. Henegar and Dr. Wiercisiewski. For example, in considering Dr.

Henegar's treatment, the ALJ notes:

> Treatment records of 2014 demonstrate that the claimant's symptoms progressively worsened, despite prolonged conservative treatment that included physical therapy, and she had severe back pain that radiated primarily to her right leg, with some left leg symptoms, as well. Exhibit 3F at pages 17, 45. She underwent an L4-L5, L5-S1 transforaminal lumbar interbody fusion (TLIF) on August 25, 2014. Exhibit 2F at page 3. She remained intact, with good strength in her bilateral lower extremities. Exhibit 2F at page 3. Her pain was controlled with oral medication. Exhibit 2F at page 3. Discharge summary notes of August 29, 2014 state the claimant's oxygen saturation level was 92 percent; that her respirations were non-labored; her neck was supple and non-tender; she was alert, with normal sensory functioning; intact cranial nerves; and had 5/5 strength, with no drift or dysmetria. Exhibit 2F at page 5. She participated in a course of physical therapy. Exhibit 3F at page 14. Progress notes from her first post-operative visit state the claimant walked with a slow and steady gait. Exhibit 3F at page 14. She reported, at her second post-operative visit, that she was significantly improved. Exhibit 3F at page 10. However, she experienced a setback in her recovery because of a fall. Exhibit 3F at page 10.
>
> Treatment notes dated March 10, 2015 state the claimant continued to have constant pain following the lumbar fusion in August of 2014. Exhibit 3F at page 33. She reported exacerbation of symptoms with sitting; occasional radiation to her leg, with right knee pain; intermittent spasms and twitching in the right leg; and persistent weakness in the right leg. Exhibit 3F at page 33. However, the claimant felt that her symptoms were improving. Exhibit 3F at page 33. Examination revealed improved gait and station; improved strength and sensation in the right leg; intact cerebellar function and coordination; and intact cranial nerves. Exhibit 3F at page 33. X-rays showed good construct position and good alignment, with no evidence of complication. Exhibit 3F at page 33. Progressive improvement was noted, and the claimant was released for follow up as needed. Exhibit 3F at page 34.

(Tr. 20).

The ALJ goes on to cite to more records from Dr. Wiercisiewski:

19

> Nerve/EMG studies of May 16, 2014 revealed electrodiagnostic evidence of mild chronic radiculopathy at the right L5/S1 levels; no electrodiagnostic evidence of a peripheral neuropathy in the right lower extremity; and no other significant electrodiagnostic findings. Exhibit 3F at pages 3-4.

(Tr. 21).

> EMG/Nerve conduction studies on May 21, 2015 showed electrodiagnostic evidence of a mild chronic radiculopathy at the right L5/S1 levels; no electrodiagnostic evidence of a peripheral neuropathy in the right lower extremity; and no other significant electrodiagnostic findings. Exhibit 9F at page77.

(Tr. 22).

It appears to the undersigned that the ALJ thoroughly considered the recommendations and treatments from all treating physicians and adequately discussed Plaintiff's medical records.

Finally, if there is any error for failing to explicitly assign weight to the treatment records of these five treating physicians, the undersigned finds it to be a harmless error for it does not affect the substantial rights of the parties. See 20 C.F.R. § 498.224. The Fourth Circuit has generally found an ALJ's error is harmless when he "conducted the proper analysis in a comprehensive fashion," "cited substantial evidence to support his finding," and would have unquestionably "reached the same result notwithstanding his initial error." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994).

Here, the records from Drs. Henegar, Wiercisiewski, and Gore suggest the Plaintiff responded well to surgery and, therefore, assigning weight to them would have been inconsequential to the outcome of the disability finding. Treatment records from Dr. Henegar show Plaintiff improved and healed progressively without evidence of complication and was doing better than she was prior to the operation. (Tr. 385). Plaintiff was encouraged to exercise and continue stretching (Tr. 363, 366). Dr. Gore recommended Plaintiff undergo an aquatic therapy

program to help strengthen her lower extremities and to help lose weight (Tr. 807). He also suggested a trial spinal cord stimulator, however, the Plaintiff was not interested in pursuing any more surgery. (Tr. 811). Plaintiff requested additional injections to provide pain relief, however, Dr. Gore decided to hold off on injections for a period of time. (Tr. 811). Lastly, Dr. Gore recommended Plaintiff continue home exercises and stretching and prescribed a TENS unit to help reduce pain. (Tr. 811). Based on the foregoing reasons, it is clear the ALJ would have reached the same result had he assigned weight to additional treating physicians, and thus, the error is harmless.

The undersigned is persuaded that the ALJ thoroughly considered all medical opinions in the record together with the rest of the relevant evidence and, thus, is satisfied that substantial evidence supports the ALJ's decision. As noted above, Plaintiff declined to file a Reply brief addressing the Commissioner's briefing. See Local Rule 7.2(e).

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 14) is **DENIED**; the Defendant's "Motion For Summary Judgment" (Document No. 16) is **GRANTED**; and the Commissioner's determination is **AFFIRMED**.

**SO ORDERED**.

Signed: May 21, 2019

David C. Keesler
United States Magistrate Judge